**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, formerly known as THE TRAVELERS INDEMNITY COMPANY OF ILLINOIS | CIVIL ACTION NO. 3:09-CV-1747 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| ROBERT K. MERICLE and MERICLE CONSTRUCTION, INC., | |
| Defendants. | |

## MEMORANDUM

Presently before the Court are the Motion for Summary Judgment by Defendants Robert K. Mericle and Mericle Construction, Inc. ("Mericle Construction") (Doc. 18), the Cross-Motion for Summary Judgment by Plaintiff Travelers Property Casualty Company of America ("Travelers") (Doc. 29), the Motion for Summary Judgment on Defendants' Amended Counter Claim filed by Defendants (Doc. 48), and Motion for Summary Judgment on Defendants' Amended Counter Claim filed by Plaintiff (Doc. 53). For the reasons discussed more fully below, Defendants' motions will be denied and Plaintiff's motions will be granted.

## BACKGROUND

On November 18, 2009, Plaintiff filed its Amended Complaint (Doc. 4) seeking a declaration that it does not owe Defendants Mericle and Mericle Construction a duty to defend or indemnify Defendants in an underlying civil litigation against them (Count I). Defendants filed their answer on January 8, 2010 (Doc. 18), asserting counterclaims seeking

a declaration that Plaintiff does have a duty defend Defendants in the underlying civil matter (Count I) and bringing a cause of action for breach of contract (Count II) for denying coverage. On March 4, 2010, Defendants filed Amended Counterclaims, seeking to have their causes of action apply to a separate civil action that was also filed against Defendants.

## A. The Underlying Cases

The instant suit arises out of the following cases filed in the Middle District of Pennsylvania: *Wallace v. Powell*, No. 3:09-cv-0286, *Conway v. Conahan*, No. 3:09-cv-0291, *H.T. v. Ciavarella*, No. 3:09-cv-0357, and *Humanik v. Ciavarella*, No. 3:09-cv-0630 ("*Wallace* Action"). These suits have all been consolidated under civil action number 3:09-cv-0286 by this Court's Case Management Order of May 14, 2009. This suit, as per Defendants' Amended Counterclaim, also arises out of *Clark v. Conahan*, No. 3:09-cv-2535 ("*Clark* action"), which was brought on a similar factual predicate as the *Wallace* action. Collectively, the *Wallace* and *Clark* actions will be referred to in this opinion as "the underlying cases." The factual background of the *Wallace* action can be found in *Wallace v. Powell*, No. 3:09-cv-0286, 2009 WL 4051974 (M.D. Pa. Nov. 20, 2009), and in *Clark v. Conahan*, No. 3:09-cv-2535, slip op. at 1-7 (M.D. Pa. Aug. 25, 2010). This opinion will only relate the facts necessary for an understanding of the current declaratory judgment suit.

There are two complaints in the *Wallace* action: the Master Individual Complaint ("MIC") and the Master Class Action Complaint ("MCAC"). The MIC alleges that Mericle Construction is a close corporation that was responsible for constructing juvenile detention facilities that were used to house juvenile offenders who were allegedly detained in violation of their rights, and that Mericle is "an owner, shareholder, officer and operator" of Mericle

2

Construction. Mericle and Mericle Construction were part of a conspiracy in which two Luzerne County judges received kickbacks for maintaining a high rate of occupancy in the juvenile detention facilities constructed by Mericle and Mericle Construction. As part of this conspiracy, the judges would often violate the civil rights the juveniles appearing before them by denying them right to counsel and handing down disproportionately large sentences, among other things. The MIC charges Mericle and Mericle Construction with Violation of the RICO Act (Count I), Conspiracy to Violate the RICO Act (Count II), Deprivation of Substantive and Procedural Due Process pursuant to 42 U.S.C. § 1983 (Count III), Deprivation of Rights Pursuant to 42 U.S.C. § 1983 (Count IV), Deprivation of Substantive Due Process pursuant to 42 U.S.C. § 1983 (Count V), and Civil Conspiracy (Count VIII).

The MCAC alleges that Mericle was the president of Mericle Construction during all relevant times. The factual allegations that make up the MCAC are, for the purposes of this motion, very similar to those in the MIC. The claims against Mericle and Mericle Construction in the MCAC are Conspiracy to Violate Plaintiffs' Right to  an Impartial Tribunal Guaranteed by the Fifth, Sixth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983) (Count II), Conspiracy to Deprive Youth of Their Right to Counsel and/or Knowing, Intelligent, and Voluntary Guilty Plea in violation of the Fifth, Sixth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 (Count IV), Civil RICO violations pursuant to 18 U.S.C. § 1962(c) (Count V), Civil RICO violations pursuant to 18 U.S.C. § 1962(b) (Count VI), and Civil RICO violations pursuant to 18 U.S.C. § 1962(d) (Count VII).

The *Clark* Complaint alleges that Mericle is the owner, shareholder, officer, and operator of Mericle Construction. As in the *Wallace* action, the plaintiffs in *Clark* allege that Mericle and Mericle Construction were part of a conspiracy to build juvenile detention

3

facilities, which would be guaranteed a regular stream of occupants because kickbacks would be paid to Luzerne County judges to ensure the detention and placement of juveniles in the facilities built by Mericle and Mericle Construction. The *Clark* action brings claims against Mericle and Mericle Construction for violations of plaintiffs' Fifth, Sixth, Eighth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 (Count III), violation of RICO pursuant to 18 U.S.C. § 1962(c) (Count IV), conspiracy to violate RICO (Count V), false imprisonment (Count VI), and intentional infliction of emotional distress (Count VII).

### B.    The Travelers Policies

Travelers issued both primary insurance and commercial excess (umbrella) policies to Mericle Development Corporation that covered the time period from January 1, 2000 to January 1, 2010. The primary policies all contain "Coverage A" which applies to "bodily injury" and "property damage" liability; Coverage A states:

> [Travelers] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Travelers] will have the right and duty to defend any "suit" seeking those damages.

The policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." However, Coverage A only applies if the "bodily injury" or "property damage" is 1) caused by an "occurrence" that takes place in the "coverage territory," and 2) occurs during the policy period. "Occurrence" is defined as "an accident, including continuous exposure to substantially the same general harmful conditions."

The primary policies also contain Coverage B for "Personal and Advertising Injury;" Coverage B states:

4

[Travelers] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. [Travelers] will have the right and duty to defend any "suit" seeking those damages.[1]

Personal injury is defined as "injury, other than 'bodily injury;' arising out of one or more of the following offenses: a) false arrest, detention or imprisonment; b) malicious prosecution."[2] For the primary policies covering the time period between January 1, 2000, and January 1, 2005, Coverage B excluded "personal injury . . . [a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured." For the primary policies covering the time period between January 1, 2005, and January 1, 2010, Coverage B excluded "'personal injury' . . . caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal injury.'" During this time period, Coverage B also excluded "'personal injury' . . . arising out of a criminal act committed by or with the consent of the insured."

The excess coverage policies covering the period between January 1, 2000, and January 1, 2005, stated:

[Travelers] will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit", which the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies. This insurance only applies to:

(1)     "Bodily injury" or "property damage":
        (a)     Occurring during the policy period; and
        (b)     Caused by an "occurrence"; and

---

[1]     For the primary insurance policies starting January 1, 2001, Coverage B was modified by a Web Xtend Liability endorsement, which added website related coverage to Coverage B, but did not alter any of the language in Coverage B for the purposes of this case.

[2]     Coverage B also defines personal injury as wrongful eviction, slander and libel, or invasion of privacy, but none of those provisions are applicable in the instant case.

(2) "Personal injury or "advertising injury" caused by and "offense" committed during the policy period.

The excess coverage policies covering the period between January 1, 2005, and January 1, 2010, state

> [Travelers] will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit", which the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies.
> This insurance only applies to "bodily injury or "property damage" only if:
>
> (I) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place anywhere in the world;
>
> (ii) The "bodily injury" or "property damage" occurs during the policy period.

For all of these excess coverage policies, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Personal injury" is defined, to the extent pertinent in this case, as "false arrest, detention or imprisonment" and "malicious prosecution." An endorsement to the policies covering the period between January 1, 2000, and January 1, 2002, states that the excess coverage for personal injury excludes "personal injury" "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured."

The excess coverage policies between January 1, 2002, and January 1, 2010 contain an endorsement that modifies any "excess personal, advertising and web site injury liability" coverage. This endorsement states that "as respects the insurance provided by this endorsement, none of the insuring agreements, terms, definitions or exclusions of the policy to which this endorsement in attached apply, except for Section IV – Conditions." Thus, the

6

endorsement overrides the language regarding personal injury liability in the excess coverage policies. Instead, the endorsement modifying these policies states that:

1.  [Travelers] will pay on behalf of the insured those sums in excess of the payable under the terms of any Personal, Advertising and Web Site Injury Liability Insurance included in the "underlying insurance", that the insured becomes legally obligated to pay as damages because of:

    a.  "Personal injury" and advertising injury" . . .

3.  This insurance is subject to the same insuring agreements, terms, definitions, exclusions and conditions as any Personal, Advertising and Web Site Injury Liability Insurance included in the "underlying insurance", except for the provisions of this endorsement.

The "underlying insurance" as defined in these endorsements are the primary commercial general liability polices that were described above. Thus, from January 1, 2002, to January 1, 2010, the excess coverage policies are subject to the same exclusions as the commercial general liability policies for that time period.

## C. Procedural History

After the *Wallace* action was filed, Mericle and Mericle Construction provided Travelers with notice of the suit and requested that Travelers defend them. Travelers responded by stating that it was analyzing the claim and could not assign, or agree to pay for, defense counsel at that time. On September 3, 2009, Travelers notified Mericle and Mericle Construction that it found that there was no coverage under the policies and that it did not have a duty to defend. On September 9, 2009, Travelers filed the Complaint in the instant suit, seeking a Declaratory Judgement that it owes Mericle or Mericle Construction neither a duty to defend nor a duty to indemnify; an amended Complaint was filed on November 18, 2009. As noted above, Defendants filed the aforementioned Amended Counterclaims (Doc. 35) on March 4, 2010.

7

On January 8, 2010, Defendants filed their Motion for Summary Judgment. (Doc. 18.) On February 11, 2010, Plaintiff filed its Cross-Motion for Summary Judgment. (Doc. 29.) Defendants then filed a Motion for Summary Judgment on Defendants' Amended Counterclaim on March 29, 2010 (Doc. 48.) On April 26, 2010, Plaintiff filed its Motion for Summary Judgment on Defendants' Amended Counterclaim. (Doc. 53.) Oral argument was held for this matter of August 10, 2010. As such, these motions have been fully argued and briefed and are currently ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

8

PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present

its own evidence or, where the nonmoving party has the burden of proof, simply point out to

the Court that "the nonmoving party has failed to make a sufficient showing of an essential

element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved

against the moving party, and the entire record must be examined in the light most favorable

to the nonmoving party.  *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving

party to either present affirmative evidence supporting its version of the material facts or to

refute the moving party's contention that the facts entitle it to judgment as a matter of law.

*Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in

the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

### A.      Interpretation of Insurance Contracts

The interpretation of an insurance contract is a question of law for the court to decide.

*Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (citing *Standard Venetian

Blind v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). A court must give effect to the

plain language of the insurance contract read in its entirety.  *Reliance*, 121 F.3d at 901.

When the language of an insurance policy is ambiguous, the provision must be construed in favor of the insured. *Reliance*, 121 F.3d at 900-01 (citing *Standard Venetian Blind Co.*, 469 A.2d at 566). Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. *Bowersox v. Progressive Cas. Ins. Co.*, 781 A.2d 1236, 1239 (Pa. Super. 2001) (citing *Hutchinson v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1985)). However, the language of an insurance policy may not be stretched beyond its plain meaning to create an ambiguity. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

The insured has the initial burden of establishing coverage under the policy. *Butterfield v. Giuntoli*, 670 A.2d 646, 651-52 (Pa. Super. 1995). On the other hand, when the insurer relies on a policy exclusion as the basis for denying coverage, it bears the burden of proving that the exclusion applies. *Mistick, Inc. v. Northwestern Nat. Cas. Co.*, 806 A.2d 39, 42 (Pa. Super. 2002). Policy exclusions are strictly construed against the insurer. *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n. 3 (3d Cir. 1998) (citing *Standard Venetian Blind*, 469 A.2d at 566).

## B.    Duty to Defend Principles

An insurance carrier's duty to defend is distinct from its duty to provide coverage. It is interpreted more broadly than the duty to indemnify. *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649, 651 (Pa. Super. 1994). An insurer may have a duty to defend even though it may have no duty to indemnify. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).

An insurer's duty to defend is determined by the allegations in the underlying complaint. *Whole Enchilada, Inc. v. Travelers Property Casualty Co. of America*, 581 F. Supp.2d 677, 694 (W.D. Pa. 2008). To determine whether there is a duty to defend, the

Court must compare coverage under the policy with the factual allegations contained in the four corners of the complaint. *Id.* Consequently, whenever a complaint filed against the insured could potentially come within the policy's coverage, the insurer's duty to defend is triggered. *Belser v. Rockwood Cas. Inc. Co.*, 791 A.2d 1216, 1219, 1222 (Pa. Super 2002); *Phico Ins. Co. v. Presbyterian Med. Servs. Corp.*, 663 A.2d 753, 755 (Pa. Super 1995). If a single claim in a complaint containing multiple claims is potentially covered, the duty to defend attaches until the underlying plaintiff can no longer recover on a covered claim. *Frog, Switch & Mfg. Co.*, 193 F.3d at 746.

Because the duty to defend is broader than the duty to indemnify, the complaint must be construed liberally, the factual allegations must be accepted as true, and all doubts as to coverage resolved in favor of the insured. *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.,* 704 A.2d 665, 669 (Pa. Super. 1997). However, to prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual allegations in the complaint, and not how the underlying plaintiff frames the request for relief. *Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745* (Pa. 1999). In other words, while the allegations in the underlying complaint will trigger a duty to defend, it is not the particular cause of action alleged that is determinative of whether there is coverage; instead, it is the factual allegations in the complaint that determine whether there is coverage. *Whole Enchilada*, 581 F. Supp.2d at 694.

**C.    Coverage A**

Coverages A only apples if the "bodily injury" was the result of an "occurrence." As noted above, "occurrence" is defined as "an accident, including continuous exposure to substantially the same general harmful conditions."

In the Third Circuit, courts have interpreted what qualifies as an "accident" for the

purposes of an occurrence-based policy like the one issued by Travelers. In *Nationwide Mutual Fire Ins. Co. v. Pipher*, 140 F.3d 222, 226 (3d Cir. 1998), the Third Circuit Court of Appeals held that whether the underlying injury for which the insured seeks defense is an accident "must be determined *from the perspective of the insured* and not from the viewpoint of the person who committed the injurious act." Therefore, if the injury is directly attributable to the intentional act of a third party as well as the negligence of the insured, it is an occurrence or accident that will trigger the insurer's to defend the insured. *Id.* at 228. In *Pipher*, the court held "that the insurer is obligated to defend under such policy . . . when the complaint alleges the insured's negligence." *Id.*

*Pipher* sought to elucidate lingering confusion that had been caused by *Gene's Restaurant, Inc. v. Nationwide Ins. Co.*, 548 A.2d 246 (1988). In *Gene's Restaurant*, the complaint alleged that the injured party was a patron in the defendant-insured's restaurant who had been violently assaulted, causing damages; however, the underlying complaint did not allege any negligence on the part of the insured. 548 A.2d at 247; *see also Pipher*, 140 F.3d at 224. The *Pipher* court "believe[d] the holding in *Gene's Restaurant* was narrow and predicated on the well-established rule of insurance law that an insurer's duty to defend an action brought against its insured is to be determined solely by the allegations contained in the plaintiff's pleadings." *Pipher*, 140 F.3d at 225. Therefore, because the complaint alleged only intentional acts and no allegations of negligence, "the *Gene's Restaurant* court came to the unremarkable conclusion that an intentional tort was not an accident and thus not a covered occurrence under the policy." *Id.*

This Court has had two opportunities to compare the underlying allegations in the *Wallace* action to policies with identical definitions of the terms "occurrence" in both *London v. PA Child Care, LLC*, No. 3:09-cv-2256, 2010 WL 1507103, at *4-5 (M.D. Pa. Apr. 14,

2010) and *Colony Ins. Co.*, No. 3:09-cv-1773, 2010 WL 817703, at *2 (M.D. Pa. Mar. 9, 2010). In *Colony*, the insurance company brought an action seeking a declaratory judgment stating that it did not owe a duty to defend a corporation that operated the juvenile detention facilities in one of the underlying cases and an owner, officer, shareholder, and operator of that corporation. *Colony*, 2010 WL 817703, at *1-2. This Court held that

> [The *Colony*] case is more like *Gene's Restaurant* than *Pipher*. There are no allegations of negligence against either [defendant]. Instead, both the MIC and MCAC allege intentional conspiratorial activity on the part of the underlying defendants, including [the *Colony* defendants]. The underlying complaints allege that [defendants] were malicious, reckless, and/or wanton, but do not allege in any way that [defendants] were negligent. Reckless, malicious, or purposeful conspiratorial activities are not "negligent" and cannot be considered "accidents" under the plain language of an occurrence-based insurance policy, like the one at bar. *See Legion Indemnification Co. v. Carestate Ambulance Inc.*, 152 F. Supp.2d 707, 716-718 (E.D. Pa. 2001) (holding that reckless or grossly negligent action and civil conspiracy are not covered "occurrences" in policy that defines "occurrence" as an "accident"). Therefore, by their plain and unambiguous language, [the occurrence-based coverages in the policy] cannot potentially apply to the facts alleged in the underlying complaints.
>
> *Id.* at *5.

The reasoning in *Colony* and *London* apply with equal force to the case at bar. The allegations in the underlying complaints against Mericle and Mericle Construction all consist of intentional and/or malicious conspiratorial conduct on the part of Defendants. The underlying complaints allege that Mericle and Mericle Construction purposely participated in a scheme whereby they would pay kickbacks to Luzerne County judges in order to create artificial demand for juvenile detention facilities that would be built by Mericle and Mericle Construction through lucrative contracts. None of these allegations suggest that Mericle or Mericle Construction were negligent in any way. As such, the "bodily injury" caused by Mericle and Mericle Construction was not accidental, and, therefore, was not caused by an "occurrence" as defined in Coverage A. Thus, there is no duty to defend Mericle or Mericle Construction for Coverage A under the primary policies or for "bodily injury" under the excess

coverage policies.

**D.      Coverage B**

Plaintiff argues it does not owe a duty to defend under Coverage B for personal injury because the allegations in the underlying case do not "arise" out of a claim for false imprisonment. Plaintiff contends that, because there are no causes of action against Mericle or Mericle Construction for false imprisonment in the underlying complaints, it does not owe a duty to defend. However, "Pennsylvania law dictates that we look beyond the technical confines of the legal theories under which relief is being sought to the factual allegations pled." *CGU v. Travelers Property Casualty*, 121 F. Supp.2d 819, 824-25 (E.D. Pa. 2000). Clearly then, the duty to defend inquiry is not controlled simply by looking at the captions for the underlying causes of action, and Travelers may still owe a duty defend even though no claims for false imprisonment are brought against Mericle or Mericle Construction.

Instead, this Court must determine whether the underlying suit "arises" out of a claim for false imprisonment. "'[C]onstrued strictly against the insurer, 'arising out of' means causally connected with, not proximately caused by.'" *Roman Mosaic & Tile Co. v. Aetna Casualty & Surety Co.*, 704 A.2d 665, 669 (Pa. Super. 1997) (quoting *Erie Ins. Exchange v. Eisenhuth*, 451 A.2d 1024, 1025 (Pa. Super. 1982)). This construction of "arising out of" has been used in interpreting the scope of comprehensive general liability policies that, like the policies at bar, insure against "personal injuries" that "arise out of" defamation, false imprisonment, and invasion of privacy. *Id.* Therefore, this Court must determine whether "the nature of the allegations and claims raised in the underlying complaint filed in the instant matter arise out of the torts enumerated in the policy," namely false imprisonment. *See id.*

Although the underlying complaints do not specifically make a claim for false imprisonment against Mericle or Mericle Construction, the allegations and claims in the

instant case are at least causally connected with the tort of false imprisonment. The allegations in the underlying complaints stem from a far-reaching conspiracy that resulted in the allegedly improper custodial detention of hundreds of juveniles. The underlying complaints allege that Mericle and Mericle Construction conspired to have juveniles deprived of their constitutional rights so that they could be housed in two juvenile detention centers that Mericle and Mericle Construction were hired to build. These juveniles were then unlawfully housed at these detention centers to increase the need for more housing for juvenile offenders and creating demand for more new construction for Mericle and Mericle Construction. Considering the broad reading of "arising out of" espoused by Pennsylvania courts, the allegations against Mericle and Mericle Construction are causally connected to claims for false imprisonment, and, therefore, "arise" out of such claims, thereby triggering Travelers' duty to defend under Coverage B of the primary policies and the "personal injury" liability of the excess policies. This Court will now examine the potentially applicable policy exclusions.

### 1. Knowing Violation of Rights

Policy exclusions are to be read narrowly against the insurer. *Selko v. Home Ins. Co.*, 139 F.3d at 152 n.3. However, even reading the "knowledge that the act would violate the rights of another" exclusion narrowly against Travelers, the allegations against Mericle and Mericle Construction in the underlying complaint definitely fall within the scope of this exclusion to Coverage B.

As with, Coverage A, this Court had an opportunity to discuss such a policy exclusion in *Colony* and *London*, and held:

> The MCAC alleges that [defendants] entered into a corrupt conspiracy with Luzerne County judges, whereby the judges would receive payment from [defendants]l to ensure that the underlying plaintiffs would be placed in the detention facilities [owned and operated by defendants]. (MCAC at ¶ 790.) It

further alleges that [defendants] "participated in this corrupt conspiracy" and detained the underlying plaintiffs in the detention facilities "in spite of the corruption and illegality underlying the detention orders." (MCAC at ¶ 791.)

. . . .

Even reading the knowing violation exclusion strictly against [plaintiff], the underlying complaints clearly allege that [defendants] were part of a conspiracy in which they committed false imprisonment of the underlying plaintiff with the knowledge that their detention had been procured by violating the constitutional rights of the plaintiffs. It is alleged that [defendants] knew of these deprivations because it was part of the scheme, funded by their kickbacks, to facilitate detention of the juveniles in the facilities [owned and operated by defendants]. Even though the MIC and MCAC make out claims for false imprisonment that would otherwise fall under the protection of Coverage B, the alleged knowing violation of the underlying plaintiffs' rights trigger the "knowing violation" exclusion and strip [plaintiff] of its duty to defend against the allegations in the underlying complaints.

*Colony*, 2010 WL 817703, at *6.

The MCAC alleges that Mericle and Mericle Construction paid the Luzerne County judges $997,600 for their roles in facilitating the construction of the first juvenile detention center and then an additional $150,000 for an addition to that facility. (MCAC ¶¶ 656, 661.) In order to conceal the first payment, Mericle signed and backdated a "Registration and Commission Agreement" as an attempt to hide the payment as a broker's fee. (MCAC ¶ 702.) The judges then began to consistently place youths in the facility, which paved the way for the construction of a second facility; as a result, Mericle and Mericle Construction had a financial interest in placing juveniles in these facilities. (MCAC ¶ 669.) It is further alleged that two unnamed parties, one of whom is presumed to be Mericle, concealed $2.6 million in payments to the judges that were made in exchange for the referral of juveniles to the facilities build by Mericle. (MCAC ¶ 695.)

Even looking to the actual causes of action against Mericle and Mericle Construction, namely violations of civil RICO and 42 U.S.C. § 1983, these causes of actions require intent on the part of Defendants. The § 1983 claims allege that Mericle intentionally conspired with

16

the judges, who were acting under color of state law, to violate the rights of hundreds of juvenile offenders. The allegations in the underlying complaint state that the false imprisonment of the underlying plaintiffs was caused by or at the direction of Mericle and Mericle Construction with their knowledge that they would be violating the rights of the juveniles by precluding them from their right to an impartial tribunal and other constitutionally protected procedural safeguards. Therefore, the "knowing violations of rights of another" exclusion included in the primary coverage policies from January 1, 2005, to January 1, 2010, and included in the excess coverage policies by reference during the same time period are applicable in this case. Thus, Travelers does not owe Mericle or Mericle Construction a duty to defend for action occurring during this time period.

### 2. Willful Violation of a Penal Statute

Travelers also argues that it does not owe a duty to defend because of the provision in the policies that exclude coverage for "personal injury" "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured." Although neither the Third Circuit Court of Appeals nor the Pennsylvania Supreme Court have interpreted this exclusionary language for "personal injury" coverage, several other courts of appeals have examined similar language in policies.

The Seventh Circuit Court of Appeals had the opportunity to do so in *Carney v. Village of Darien*, 60 F.3d 1275, 1280-81 (7th Cir. 1995). In *Carney*, a police officer allegedly arrested two individuals for having open intoxicants in their vehicle, and then proceeded to harass, threaten and attempt to coerce the individuals "into performing sexual acts in exchange for voiding the citations." 60 F.3d at 1275. These individuals then brought a suit pursuant to § 1983, alleging Fourth and Fifth Amendment violations. *Id.* The police officer had an insurance policy that provided coverage for "personal injury" arising out of false

imprisonment, false arrest, or malicious prosecution, but excluded suit for "personal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured." *Id.* at 1280. The court held the exclusion precluded coverage for the underlying acts, reasoning that the underlying complaint alleged acts of restraint by the officer that amounted to an intentional violation of Wisconsin's criminal statute for false imprisonment. *Id.* at 1280-81.

In *All American Ins. Co. v. Preferred Risk Mutual Ins. Co.*, 971 F.3d 438, 440 (10th Cir. 1992), a volunteer bus driver who worked for a church pled guilty to two counts of lewd molestation for his sexual abuse of minors he was transporting for the church. Civil suits were then filed against the bus driver, the church, and several member of the church's board for negligently failing to investigate the bus driver's background and failing to discharge the bus driver "on learning of his allegedly aberrant behavior." *All American*, 971 F.2d at 440. One of the defendants (not the bus driver) sought a declaration that his insurance company had a duty to defend him against the claims for state law negligence; the policy contained an exclusion for "personal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge of [sic] consent of any insured." *Id.* at 440-41. The Tenth Circuit Court of Appeals held that the insurer did not owe a duty to defend due to the "willful violation of a penal statute" exclusion, reasoning that the underlying complaint "would not have stated the complete causes of action without alleging the molestation and resulting injuries" because the injuries arising from the molestation were what caused the damage to the underlying plaintiffs. *Id.* at 442-43.

In *Cubic Corp. v. Ins. Co. of North America*, 33 F.3d 34, 35 (9th Cir. 1994), the underlying defendant allegedly bribed members of the United States Air Force in order to get confidential information relating to the award of government contracts, and was sued by a

competitor for violating, *inter alia*, civil RICO, the Robinson-Patman Act, the Sherman Antitrust Act, and several state torts. The underlying defendant had an insurance policy that covered it for damages it became obligated to pay because of "personal or advertising injury," but explicitly excluded "personal injury or advertising injury arising out of willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured." *Cubic*, 33 F.3d at 35. In holding that the coverage did not apply because the alleged violations did not fall under the definition of "advertising injury," the Ninth Circuit Court of Appeals added "[t]he explicit language of three of the policies covering [underlying defendant] excludes coverage for actions taken in violation of a penal statute . . . . No more pernicious insurance practice can be imagined than permitting defense contractors to carry insurance protecting them if they commit bribery of the Defense Department and are discovered." *Id*. at 36.

In *National Fire and Casualty Co. v. West*, 107 F.3d 531, 532-33 (7th Cir. 1997), a police officer pled guilty to five counts of child molestation; the minor who had been molested then brought a civil action against the officer, the police department, and the municipality, alleging violations of § 1983 and several common law torts, including negligent hiring against the police department and municipality and assault, battery, invasion of privacy and intentional infliction of emotional distress against the police officer. The underlying defendants had an insurance policy that covered suits arising out of "personal injury," including false imprisonment, but excluding "personal injury arising out of the willful violation of a penal statute." The Seventh Circuit Court of Appeals held that the aforementioned policy exclusion applied to the underlying complaints and that the insurance company had no duty to defend the officer, reasoning that "[t]he allegations relating to [the police officer] clearly speak to intentional acts that violated penal statutes." *Id.* at 537.

However, some other courts have held that the "willful violation of a penal statute" exclusion was not applicable and that insurer had a duty to defend. In *Aetna Casualty & Surety Co. v. Sunshine Corp.*, 74 F.3d 686 (6th Cir. 1996), the underlying defendant was sued in a class action law suit due to alleged violations of the Fair Credit Reporting Act ("FCRA") and civil RICO; the underlying plaintiffs were tenants who denied liability after they were told they owed $994.12 in carpet damage after moving out of an apartment complex operated by the underlying defendant. The insurer for the underlying defendant sought a declaration that it did not have a duty to defend because the underlying plaintiffs' allegations "ar[ose] out of the willful violation of a penal statute." *Id.* The Sixth Circuit Court of Appeals held that the exclusion did not apply and that the insurer had a duty to defend the underlying defendant, reasoning that "[t]he scattershot attack launched against [the underlying defendant] by [underlying plaintiffs] is by no means limited to a claim of willful violation of the FCRA" and "it remains to be seen whether the violation was willful." *Id.* at 688.

In the instant case, the underlying complaints are replete with allegations that Mericle and Mericle Construction engaged in various instances of mail and wire fraud, in an attempt to conceal the bribery of Luzerne County judges, so that Mericle and Mericle Construction would be given contracts to build lucrative juvenile detention centers that were being filled with juvenile offenders whose rights were being violated by those same judges. (*See, e.g,* MIC ¶¶ 31, 44, 50 75; MCAC ¶¶ 2, 656, 695, 753, 758). Unlike the underlying plaintiffs in *Sunshine*, the plaintiffs attack in the *Wallace* and *Clark* actions is not "scattershot" *vis a vis* Mericle and Mericle Construction, but, instead, specifically alleges actions that amount to willful violations of several penal statutes, including mail fraud, wire fraud, honest services fraud, and state law bribery. This case is more like those discussed by the Seventh, Ninth, and Tenth Circuit Courts of Appeals; the entire thrust of the underlying complaints is that

Mericle and Mericle construction caused personal injury to the underlying plaintiffs by intentionally and willfully engaging in a vast criminal conspiracy to bribe members of the judiciary to ensure a constant flow of juvenile offenders to create the need for more facilities that would be built by Mericle and Mericle Construction. Furthermore, like *All American*, it is the damages that stemmed from these criminal violations that gave rise to the underlying civil suits. This is a willful violation of several penal statutes, including the federal crimes of wire, mail, and honest services fraud as well as Pennsylvania state law bribery.

Much of Defendants' arguments center around what the underlying plaintiffs will be able to prove at trial, but that is not the inquiry this Court must make here; instead, if everything the underlying plaintiffs are alleging is true, this Court must determine whether those allegations would arise out of the willful violation of a penal statute. Considering that "arising out of" means "causally connected" for both policy coverage and policy exclusions, *see Essex Ins. Co. v. RMJC, Inc.*, 306 Fed. Appx. 749, 752 (3d Cir. 2009) (citing *Forum Ins. Co. v. Allied Sec., Inc.*, 866 F.2d 80, 82 (3d Cir. 1989)), this Court holds that the allegations against Mericle and Mericle Construction are causally connected with their willful violations of the aforementioned criminal statutes, and, therefore, are excluded by the provision disclaiming coverage for "willful violation of a penal statute." Because this exclusion applies, there is no coverage for the primary policies or the excess coverage polices for the period between January 1, 2000, and January 1, 2005.

### E.    Duty to Indemnify/Breach of Contract

Because the duty to indemnify narrower than the duty to defend, it follows that any time there is no duty to defend, there is no duty to indemnify. *See Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 821 (3d Cir. 1994). As discussed, Mericle and Mericle Construction have not shown that Travelers has  a duty to defend. Therefore, it cannot currently prove that

Travelers also has a duty to indemnify and summary judgment will be granted in favor of Travelers.

Likewise, because Travelers does not have a duty to defend these actions pursuant to these policies, it has not breached its contact with Defendants. Therefore, summary judgment will be granted in favor of Travelers on Defendants' counter-claim for breach of contract.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment by Defendants Robert K. Mericle and Mericle Construction, Inc. (Doc. 18) will be denied, the Cross-Motion for Summary Judgment by Plaintiff Travelers Property Casualty Company of America (Doc. 29) will be granted, the Motion for Summary Judgment on Defendants' Amended Counter Claim filed by Defendants (Doc. 48) will be denied, and Motion for Summary Judgment on Defendants' Amended Counter Claim filed by Plaintiff (Doc. 53) will be granted. An appropriate order follows.

August 31, 2010                                    /s/ A. Richard Caputo
Date                                               A. Richard Caputo
                                                   United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, formerly
known as THE TRAVELERS INDEMNITY
COMPANY OF ILLINOIS

     Plaintiff,

       v.

ROBERT K. MERICLE and MERICLE
CONSTRUCTION, INC.,

     Defendants.

CIVIL ACTION NO. 3:09-CV-1747


(JUDGE CAPUTO)


## ORDER

**NOW**, this  31st  day of August, 2010, **IT IS HEREBY ORDERED** that:

(1)    The Motion for Summary Judgment by Defendants Robert K. Mericle and Mericle Construction, Inc. (Doc. 18) is **DENIED.**

(2)    The Cross-Motion for Summary Judgment by Plaintiff Travelers Property Casualty Company of America (Doc. 29) is **GRANTED**.

(3)    The Motion for Summary Judgment on Defendants' Amended Counter Claim filed by Defendants (Doc. 48) is **DENIED**.

(4)    The Motion for Summary Judgment on Defendants' Amended Counter Claim filed by Plaintiff (Doc. 53) is **GRANTED**.

(5)    **JUDGMENT IS ENTERED** in favor of Plaintiff.

(6)    The Clerk of Court shall mark this case as **CLOSED**.


                     /s/ A. Richard Caputo
                     A. Richard Caputo
                     United States District Judge